MRS. E. LEE ROWE

VS

7375

NO. 7375.

CITY OF NEW ORLEANS & THE SEWERAGE

& WATER BAORD.

CHARLES F. CLAIBORNE, JUDGE.

May 20th. 1918.

7375

■

CHARLES F. CLAIBORNE, JUDGE.

Plaintiff "unwittingly walked into" one of the several open canals of this City; hence this suit in damages. From a judgment rejecting her demand *she* plaintiff appeals.

The accident occurred at the corner of Dublin and Belfast, in the rear of the City, in a locality lately developed, sparsely settled, and which may be described as follows:

Dublin Street or Avenue in one block above Carrollton Avenue and runs parallel with it, from the River to the woods; it is 100 feet wide. That section of the country was annexed to the City of New Orleans only in 1874. Some years before, a drainage canal had been dug along the lower side of this street. The lower bank of the canal is adjacent to the property line, and runs 23 feet in a gentle slope of about 35 degrees before it reaches the canal proper which is 14 feet wide. The bottom of the canal, at its lowest depth, is a little over ten feet from the surface of the street; the canal is 50 feet wide from top of bank to bank.

Belfast Street runs at right angles with Dublin Street and bisects it 25 blocks from the river in the direction of the woods. It runs up from Carrollton Avenue to Dublin Street thence across and beyond it. It is 50 feet wide from property line to property line. The sidewalk upon each side is about nine feet wide. The sidewalk, on the river side, is paved for a distance of only 150 feet, leaving the remainder unpaved.

At the end of this sidewalk there is a foot-bridge crossing the Dublin Street canal. The Street proper is not paved. Along the centre of the sidewalk on the wood side or on the right hand side going up towards Dublin Street there is a cement pavement from Carrollton Avenue extending to 19 feet from the corner of Dublin Street, or far from the point where the bank of

the Canal begins. From the end of this pavement the ground continues covered with grass, and extends 19 feet until it reaches the bank of the Canal; there was no barrier of any sort at the end of this walk to warn anyone of the presence of the Canal; a little beyond this paved walk there stood a Chinaball tree. At or near the end of this pavement, on the left is a two-plank walk running diagonally across Belfast Street from the wood side banquet to the river side banquet until it reaches the head of the footbridge crossing Dublin Canal. There is an electric light at the corner of Carrollton Avenue and Belfast, 286 feet, another at the corner of Dublin and Apple, 325 feet, and a third at the corner of Dublin and Apricot 325 feet distan' There are very few houses on the upper side of Dublin Street.

The plaintiff describes the manner in which she fell as follows:

She was 72 years old, weighing about 165 pounds, suffering from no infirmity, as stated by her Counsel she "had been an unusually healthy and active woman;" and of an active temperament; her eyes were good, and she used glasses only to sew or read; she had lived in this City since October 1893, but not in the neighborhood of the accident; she had gone there but once before in the month of May, when she walked up Apple Street, one block nearer the river than Belfast, crossed the Dublin Street Canal and walked to Cambronne Street, to see a friend, whither she was again going at the time of this accident.

On August 16th. 1916 she arrived from Indiana on the Illinois Central Railroad; she reached New Orleans at 8:30 P.M., she expected this friend to meet her there, but the friend did not show up; the object of having this friend come to meet her was simply because she was going to her house; she had not the least doubt about her ability to find her way at night because she had lived in this city for 25 years; she did not think she would have any trouble in finding any place in this City. She boarded the St. Charles Belt Cars and asked the conductor to let her off at the 2500 block on Carrollton Ave; the car stopped at the 2600 block and she got off, as she thought, on

237

Apple Street, but in reality on Belfast Street, one block fur-
ther than Apple Street, but she did not know it. She walked
up Belfast Street about half a block, and then to use her own
language:

"I happened to see some persons on a gallery and I
asked them how far I had to go to get to Cambronne Street; they
told me it was two blocks from the corner of Dublin; the gen-
tleman came and talked to me a little while, and said this is
a very dark street, I said I am not afraid, because I am used
to going whereever I want to go; he went back, I went on, and
in two minutes I felt as if I stepped on a schellinger walk,
but the idea was at the moment that it was the street with a
damp place; but still I had the feeling I was not afraid, so
I walked along and without any warning I was down.

I didn't know where I was. I din't know that I had
fallen into anything, but I could not get up."

It is evident that the people to whom she talked on
the gallery were the residents of the last house on the block
adjoining the canal, as shown on the plan in evidence, and that
the "damp ground" which she felt under her slippered feet was
the ground beyond the paved sidewalk 19 feet long up to the
bank of the Canal. This gallery is 15 feet from the sidewalk.

She adds that there was a growth of weeds there; that
she did not see the little plankwalk on the left crossing the
street diagonally and leading to the head of the bridge across
the canal; it was too dark to see anything; she did not know
whether the night was dark or not, but it was a very dark at
that particular spot; she was in a hurry to get to her destina-
tion. Since her fall a fence has been erected some feet from
the canal, and the undergrowth has been cut away. She was a
dressmaker for many years, then gave massage treatment, and
in that occupation, often went out at night at 9 and 10 o'clock,
and went home alone without the least fear; after this accident
she was not able to run a sewing machine because her eyes were
affected and she could not see any; she had no trouble with her

238

eyes before this accident; she wore glasses then only to read and sew; but up to the time of the accident she supported herself by sewing.

Dr. J. D. Nix says the plaintiff was "far above the average of her age in activity."

A witness who resided on Belfast Street, at a distance of 90 feet from the Corner of Dublin, testifies that on the night of the accident the two lights on Dublin Street, corner of Apple and corner of Apricot were burning, and gave sufficient light for him to go across the canal.

The three elements of negligence and fault charged against the defendants are 1st. That they maintained no light at the corner of Dublin and Belfast Street as it was their duty to do under the City Charter of 1912; 2nd. That they should have had a bridge at the end of the cement walk, in order to prevent accidents such as the one which happened to her, and 3rd. In default of a bridge they should have put up barriers to prevent people from falling where plaintiff fell.

We do not find it necessary to examine those allegations, as we have come to the conclusion that plaintiff brought her troubles upon herself by her own want of care *negligence and* ~~and negligence~~ and that she cannot therefore recover; she cannot take advantage of her fault.

We find the law clearly set forth in the following authority: 28 Cyc. p. 1418: "As a general rule, where a person injured by reason of a defect or obstruction in a street or other public way, is himself guilty of some act of omission amounting to a want of ordinary care which concurring or co-operating with the negligence of defendant materially contributes to or is the proximate cause of the injury complained of, has he is guilty of contributory negligence precluding a recovery, notwithstanding negligence on the part of defendant in causing or permitting such defect or obstruction, and notwithstanding a charter or statutory provision imposing a liability upon the municipality for injuries arising on account of the condition of any street or public ground."

Thus if, by the exercise of ordinary care and diligence

the person injured could have avoided the injury, and he fails
to exercise such care and diligence, he cannot recover for
injuries arising from a nuisance erected and maintained in a
public street, or by reason of defendant's failure to properly
safeguard excavations".

In the case of Sauer vs Union Oil Co., 43A 699 the
Court said: "An employee in a oil mill, who is directed by a
superior to go to a distant point, with no direction as to the
route to take, if he is ignorant of the route, should inquire,
and if, failing to inquire and without the direction or knowl-
edge of the superior, he selects an improper and dangerous
route through and amongst machinery, and passing over and under
running wheels and belts, when there were other proper and
safe routes, he is at fault and assumes the risk of resulting
injury."

In the case of Tatje vs Frawley 52A 884 the Court denied
relief on the ground of contributory negligence, to a pedestrian
who, while running for a car, at night, along Gravier Street,
fell into a side gutter, the existence of which he knew, or
should have known, from his acquaintance with the topography
of the City.

In the case before us, the broad canal stretched its
gloomy length and breadth in apparent and conspicuous warning;
the paved walk on which plaintiff traveled ended 19 feet before
it reached the canal; the distance from the end of the walk
to the bank of the canal was unpaved, unused, trackless, cover-
ed with weeds and damp; that, of itself, was sufficient to act
as a red light and to put a pedestrian upon notice that there
was danger ahead and to call upon him for extra caution. The
plaintiff had crossed the canal once before at Dublin Street
and knew, or should have known, that its course ran in her
path; if she did not remember it, she cannot shift the conse-
quences of her want of memory upon the defendants. While there
was no electric light at that particular corner, there were
three lights in different directions within 325 feet of the
spot; we must presume that they gave enough light to inform

one of the presence of a canal. The night was not so dark, as plaintiff herself testifies that she saw persons upon a gallery 15 feet from the sidewalk.

If she did not know her way, she should have inquired of them. With reasonable care plaintiff could have avoided the accident.

Judgment affirmed

May 20th. 1918.